UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **SHALOM IFEANYI** </br> c/o RITTGERS & RITTGERS </br> 12 East Warren Street </br> Lebanon, Ohio 45036 </br> </br>                 **Plaintiff,** </br> </br>   **-v-** </br> </br> **MOLLY ALVEY** </br> c/o University of Cincinnati </br> 2600 Clifton Avenue </br> Cincinnati, Ohio 45221 </br> *Individually and in her official capacity as* </br> *Head Women's Volleyball Coach at the* </br> *University of Cincinnati* </br> </br> **and** </br> </br> **MAGGIE MCKINLEY** </br> c/o University of Cincinnati </br> 2600 Clifton Avenue </br> Cincinnati, Ohio 45221 </br> *Individually and in her official capacity as* </br> *Executive Senior Associate Athletic Director* </br> *at the University of Cincinnati* </br> </br> **And** </br> </br> **UNIVERSITY OF CINCINNATI** </br> 2600 Clifton Avenue </br> Cincinnati, Ohio 45221 </br> </br>                 **Defendants.** | Case No. </br> </br> Judge </br> </br> **COMPLAINT; JURY DEMAND** </br> **ENDORSED HEREON** |

Now comes Plaintiff, Shalom Ifeanyi ("Plaintiff"), by and through counsel, and for her Complaint states as follows:

## PRELIMINARY STATEMENT

1. This civil rights action challenges Defendants' unlawful and gender and racially discriminatory removal of Plaintiff from the University of Cincinnati women's volleyball team because Plaintiff did not fit Defendant's biased "image" of a University of Cincinnati volleyball player. Plaintiff brings these federal claims for racial/color discrimination, sex discrimination and harassment, and retaliation under 42 U.S.C. § 2000(e) *et seq.* and 42 U.S.C. § 1981 *et seq.* Plaintiff also brings racial/color discrimination, sex discrimination, and sexual harassment claims under Ohio law, R.C. 4112.02 as well as state law claims for intentional infliction of emotional distress caused by the actions of Defendants.

## PARTIES

2. Plaintiff is an individual currently residing in Dallas, Texas.

3. Defendant Molly Alvey ("Alvey"), is and was at all times relevant to this action, the Head Women's Volleyball Coach at the University of Cincinnati. Alvey is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacities.

4. Defendant Maggie McKinley ("McKinley"), is and was at all times relevant to this action, the Executive Senior Associate Athletic Director at the University of Cincinnati. McKinley is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacities.

5. The University of Cincinnati ("UC") is a recipient of federal funds under and a public university created by the Ohio legislature. UC has a principal place of business at 2600 Clifton Avenue, Cincinnati, Ohio 45220. Under Ohio Revised Code 3361.01, UC's Board of Trustees is the governing body of the university.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the dispute between the parties pursuant to 28 U.S.C. §§ 1331 because Plaintiff's civil causes of action arise under the Constitution and laws of the United States.

7. This Court also has jurisdiction of the supplemental state claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because this Court sits in the district where all of the Defendants reside and is also the district where the substantial part of the events or omissions in connection with Plaintiff's claims arose.

**FACTS**

9. Plaintiff has played competitive volleyball for most of her life.

10. Beginning around the age of 14, Plaintiff began getting recruited by coaches to play college volleyball.

11. Because Plaintiff's family did not have the financial means to afford a college education for Plaintiff without incurring significant debt, Plaintiff devoted very substantial amounts of time and energy in training to make herself eligible to participate in college athletic scholarship programs.

12. As a result of those efforts, Plaintiff became a student-athlete coveted by college coaches because of her speed, power, strong build – similar to that of Serena Williams – and her ability to jump and "hit a heavy ball." In the world of competitive volleyball, this means that Plaintiff had developed a powerful volleyball strike that makes it difficult for an opposing team to return, resulting in increased scoring opportunities and the all-important wins that sustain and improve the standing of college athletic programs.

13. Alvey was one of the coaches who heavily recruited Plaintiff while she was in high school.

14. At all times relevant to this Complaint, including while Alvey recruited Plaintiff, Alvey was aware of Plaintiff's strong build and her dark, African American complexion.

15. In or around 2016, Plaintiff elected to attend Oregon State University on an athletic scholarship, but this did not end Alvey's and UC's interest in recruiting Plaintiff to their athletic program.

16. Following the conclusion of the 2016 season, Plaintiff elected to explore transfer options to continue her college volleyball career, due in part to Alvey's continued interest in Plaintiff.

17. Alvey, again aware of Plaintiff's strong build and dark, African American complexion, recruited Plaintiff heavily in hopes that she would attend UC beginning in January of 2017.

18. Primarily in response to, and in reliance upon, the efforts of Alvey, Plaintiff accepted Alvey's request to attend UC and enrolled as a student-athlete in or around January 2017.

19. In announcing Plaintiff's addition to the women's volleyball team through the UC's Athletic Department website, Alvey made this public statement about Plaintiff:

> We are very excited to add [Plaintiff] to our team. She has a very positive, upbeat personality and intense competitive spirit on the court. She will fit immediately into our program's culture. I expect [Plaintiff] to score points at the net with her fast arm. She hits a heavy ball and is working on developing multiple shots to her game.

20. Almost immediately upon her arrival on campus, Alvey began harassing and shaming Plaintiff about pictures she was posting on her personal social media accounts.

21. The photographs Alvey took issue with all pictured Plaintiff fully clothed.

22. Specifically, Alvey told Plaintiff that many of her photos were "too sexy."

23. Upon information and belief, no such requests were made to other members of the women's volleyball team who were of slighter build and lighter complexion despite photographs picturing them in outfits, including but not limited to, two-piece swimsuits.

24. Afraid of retaliation by Alvey, Plaintiff removed the photographs and began to simply post headshots on her social media profiles for some time thereafter.

25. From February 2017 until June of 2017, Plaintiff trained relentlessly to recover from knee surgery in preparation for the season.

26. She missed no workouts, did extra rehabilitation work on her off days, and often asked Alvey and the training staff for additional workouts so should could become even more explosive on the court.

27. On or about June 19, 2017, Alvey and Plaintiff met in Alvey's office to discuss Plaintiff's rehab progress and her role on the team for the upcoming season.

28. Near the end of the meeting, Alvey got up and closed to the door to her office.

29. Alvey then demanded Plaintiff pull up her Instagram profile.

30. Alvey thereafter pointed to a photograph of Plaintiff and demanded that she remove it from her profile. A copy of that photograph is attached hereto as Exhibit 1.

31. Specifically, Alvey said to Plaintiff: "When the football players see this, what do you think they see? They see your breasts. It's seductive."

32. Alvey thereafter demanded that Plaintiff remove the photograph from her Instagram profile while she was in her office.

33. Fearful of retaliation and continued shaming from Alvey, Plaintiff complied with her request, deleted the photograph, and left the office.

34. On or about June 21, 2017, one day after Plaintiff's 19th birthday, Plaintiff received the text messages attached as Exhibit 2 from Alvey.

35. In these text messages, Alvey again demanded that Plaintiff remove certain pictures from her Instagram account.

36. Tired of the constant body shaming from Alvey, Plaintiff objected via text message to Alvey's demand. A copy of Plaintiff's response is attached as Exhibit 3.

37. Alvey never responded to Plaintiff's text message, but later acknowledged to Plaintiff that she received it.

38. During the week of June 24, 2017, Plaintiff continued to train for the upcoming volleyball season and was awarded top performer of the week by the strength training coach.

39. Despite that recognition, on or about June 29, 2017, Alvey called Plaintiff into her office and told her that she was dismissed from the team.

40. The only explanation offered by Alvey was that she and Plaintiff "had different philosophies."

41. When Plaintiff asked if her dismissal had anything to do with her text response the prior week, Alvey indicated that she read it, but would not discuss it further and offered no other reason for this devastating action.

42. McKinley was present during this June 29, 2017 meeting and agreed with Alvey's dismissal of Plaintiff and the need for Plaintiff and UC to "part ways." Like Alvey, McKinley offered no reason for the dismissal.

43. Plaintiff was thereafter advised to return her school issued apparel by the next day.

44. She was later advised that she needed to remove all of her belongings from her athletic dorm room because Alvey was giving her room to another student-athlete.

45. Following Plaintiff's unlawful dismissal from the women's volleyball team, she filed a complaint with UC's Title IX Office concerning the discriminatory actions of Alvey and McKinley.

46. In the almost nine months since Plaintiff filed her complaint with the Title IX Office, UC has failed to complete its investigation of the allegations raised therein or to afford Plaintiff with any meaningful opportunity to appeal the decision to remove her from the team and to remove her scholarship.

47. While Plaintiff has been able to remain on scholarship for the entirety of the 2017-2018 academic year, she has been advised that based on her dismissal from the team, her scholarship would not be renewed.

48. Due to NCAA transfer rules and regulations, Plaintiff will not be able to play competitive volleyball for the 2018-2019 season, effectively ending any potential ability for Plaintiff to rely on an athletic scholarship for payment of tuition and related costs.

49. Plaintiff has therefore been forced, without the benefit of an athletic scholarship, to enroll in another university to complete her undergraduate studies and has lost earning capacity due to the delay and disruption in her education.

**FIRST CAUSE OF ACTION**
**(Race/Color Discrimination – All Defendants)**

50. Plaintiff incorporates her previous allegations as if fully rewritten herein and states further as follows.

51. Defendants' conduct constitutes unlawful disparate treatment on the basis of race/color in violation of, *inter alia*, 42 U.S.C. § 2000(e) *et seq.,* 42 U.S.C. § 1981, and O.R.C. § 4112.02.

52. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has lost her athletic scholarship, will be forced to pay for the remainder of her college education on her own, and has lost earning capacity due to the delay and disruption in her education.

53. Plaintiff has also incurred pain and suffering in the form of humiliation, frustration, aggravation, anger and depression.

## SECOND CAUSE OF ACTION
### (Sex Discrimination – All Defendants)

54. Plaintiff incorporates her previous allegations as if fully rewritten herein and states further as follows.

55. Defendants' conduct constitutes unlawful disparate treatment on the basis of sex in violation of, *inter alia*, 42 U.S.C. § 2000(e) *et seq.*, 42 U.S.C. § 1981, O.R.C. § 4112.02.

56. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has lost her athletic scholarship, will be forced to pay for the remainder of her college education on her own, and has lost earning capacity due to the delay and disruption in her education.

57. Plaintiff has also incurred pain and suffering in the form of humiliation, frustration, aggravation, anger and depression.

## THIRD CAUSE OF ACTION
### (Sexual Harassment – All Defendants)

58. Plaintiff incorporates her previous allegations as if fully rewritten herein and states further as follows.

59. Plaintiff is a member of a protected class as defined by state and federal law.

60. Defendants' body shaming and sex discrimination described herein constitutes unwelcome sexual harassment in violation of, *inter alia*, 42 U.S.C. § 2000(e) *et seq.*, 42 U.S.C. § 1981, O.R.C. § 4112.02.

61. Defendants' conduct was based on Plaintiff's sex.

62. Defendants' actions unreasonably created a hostile, offensive, or intimidating environment for Plaintiff while she was a student-athlete at UC.

63. UC, by and through, Alvey and McKinley, was aware of the body shaming described herein but made no efforts to end it.

64. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has lost her athletic scholarship, will be forced to pay for the remainder of her college education on her own, and has lost earning capacity due to the delay and disruption in her education.

65. Plaintiff has also incurred pain and suffering in the form of humiliation, frustration, aggravation, anger and depression.

**FOURTH CAUSE OF ACTION**
**(Retaliation – All Defendants)**

66. Plaintiff incorporates her previous allegations as if fully rewritten herein and states further as follows.

67. Plaintiff's objection to Alvey's body shaming, racial discrimination, sex discrimination, and sexual harassment is protected activity as defined by 42 U.S.C. § 2000(e) *et seq*.

68. UC, by and through Alvey and McKinley, was aware of Plaintiff's exercise of her protected rights.

69. In response to Plaintiff's exercise of her protected rights, UC, by and through Alvey and McKinley, dismissed Plaintiff from the women's volleyball team and refused to renew her athletic scholarship.

70. Plaintiff's dismissal from the volleyball team was a direct and proximate of result of her text message objecting to the discrimination and body-shaming she was subjected to by Alvey.

71. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has lost her athletic scholarship, will be forced to pay for the remainder of her college education on her own, and has lost earning capacity due to the delay and disruption in her education.

72. Plaintiff has also incurred pain and suffering in the form of humiliation, frustration, aggravation, anger and depression.

**FIFTH CAUSE OF ACTION**
**(Civil Conspiracy – All Defendants)**

73. Plaintiff incorporates her previous allegations as if fully rewritten herein and states further as follows.

74. Following Plaintiff's objections to the discrimination and body-shaming she was being subjected to by Alvey. UC, by and through Alvey and McKinley, engaged in a concerted effort to remove Plaintiff from the women's volleyball team in violation of 42 U.S.C. § 2000(e) *et seq*.

75. The concerted actions of Alvey and McKinley were unlawful.

76. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has lost her athletic scholarship, will be forced to pay for the remainder of her college education on her own, and has lost earning capacity due to the delay and disruption in her education.

77. Plaintiff has also incurred pain and suffering in the form of humiliation, frustration, aggravation, anger and depression.

## SIXTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress – All Defendants)

78.     Plaintiff incorporates her previous allegations as if fully rewritten herein.

79.     Defendants intended to cause, or knew or should have known that their actions would result in serious emotional distress to Plaintiff.

80.     Defendants' conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community.

81.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has lost her athletic scholarship and will be forced to pay for the remainder of her college education on her own.

82.     Plaintiff has also incurred pain and suffering in the form of humiliation, frustration, aggravation, anger and depression.

## SEVENTH CAUSE OF ACTION
### (Denial of Due Process – 42 U.S.C. 1983)

83.     Plaintiff incorporates her previous allegations as if fully rewritten herein.

84.     The acts of Alvey and McKinley represent official policy decisions of UC and are attributable to UC.

85.     At all times relevant to this Complaint, Plaintiff had a clearly established right to due process of law concerning her position of the women's volleyball team and her athletic scholarship.

86.     Plaintiff was not afforded an unbiased, careful, and deliberate review process either prior to her dismissal from the UC women's volleyball team or following the notice of the deprivation of her scholarship.

87. Defendants' actions constitute a deliberate denial, under color of law, of plaintiff's procedural due process rights as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

88. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has lost her athletic scholarship and will be forced to pay for the remainder of her college education on her own.

89. Plaintiff has also incurred pain and suffering in the form of humiliation, frustration, aggravation, anger and depression.

WHEREFORE, Plaintiff respectfully demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, reasonable attorney fees, costs and all other relief to which she may be entitled.

Respectfully Submitted,

/s/ Ryan J. McGraw

Konrad Kircher (0059249)
Ryan J. McGraw (0089436)
RITTGERS & RITTGERS
12 East Warren Street
Lebanon, Ohio 45036
Tel: 513-932-2115
Fax: 513-934-2201
konrad@rittgers.com
ryan@rittgers.com
*Attorneys for Plaintiffs*

Robert D. Martinez, Esq.
Robert D. Martinez, PLLC
4201 Wingren Drive, Suite 108
Irving TX 75062
Tel: (214) 534-7808

Fax: (214) 614-4629
Rmartinez@rdm-law.us
*Co-Counsel for Plaintiff*
*Pro Hac Vice Motion Forthcoming*

## JURY DEMAND

Plaintiff hereby demands trial by a jury of her peers as to all issues so triable herein.

/s/ Ryan J. McGraw
_____
Ryan J. McGraw (0089436)