IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Shalom Ifeanyi, | : |
| | : Case No. 1:18-cv-193 |
| Plaintiff, | : |
| | : Judge Susan J. Dlott |
| v. | : |
| | : Order Granting Motion to Dismiss and |
| Molly Alvey, *et al.*, | : Granting in Part and Denying in Part |
| | : Motion for Leave to Amend Complaint |
| Defendants. | : |

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 10) and Plaintiff's Motion for Leave to Amend Complaint (Doc. 12-1).[1] In her Complaint (Doc. 1), Plaintiff Shalom Ifeanyi, a former scholarship volleyball player at the Defendant University of Cincinnati ("UC"), alleges race and sex discrimination against UC, Defendant Molly Alvey, the head volleyball coach at UC, and Defendant Maggie McKinley, a senior associate athletic director at UC. Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12. Ifeanyi seeks leave to amend the Complaint pursuant to Federal Rule of Civil Procedure 15, but Defendants assert that the amendment should be denied as futile. For the reasons that follow, the Court will **GRANT** the Motion to Dismiss and **GRANT IN PART AND DENY IN PART** the Motion for Leave to Amend Complaint.

---

[1] Ifeanyi filed the Motion for Leave to Amend Complaint as an attachment to her Memorandum in Opposition to the Motion to Dismiss. However, the parties have briefed the Motion for Leave to Amend Complaint as a separate motion, and the Court will treat it as if it were separately filed.

1

## I. BACKGROUND

### A. The Complaint

Ifeanyi filed her Complaint against Defendants on March 20, 2018. The well-pleaded allegations of fact in the Complaint are assumed to be true for purposes of the Motion to Dismiss. Ifeanyi describes herself as having a "strong build and [a] dark, African American complexion." (Doc. 1 at PageID 4.) She played competitive volleyball growing up and was coveted for her speed, power, and her "ability to jump and 'hit a heavy ball.'" (*Id.* at PageID 3.)[2] She accepted an athletic scholarship to attend Oregon State University and played volleyball there during the 2016 season at the beginning of the 2016–2017 school year. (*Id.* at PageID 4.)

Ifeanyi elected to explore transfer options after the 2016 volleyball season. (*Id.* at PageID 4.) Alvey recruited Ifeanyi to attend and play volleyball for UC. (*Id.*) Ifeanyi accepted a scholarship to UC and enrolled as a student athlete in January 2017. (*Id.* at PageID 4.) From February 2017 through June 2017, Ifeanyi engaged in physical workouts and training to recover from a knee surgery and prepare for the fall 2017 volleyball season. (*Id.* at PageID 5.) She received the top performer award from the strength training coach the week of June 24, 2017. (*Id.* at PageID 6.)

However, Ifeanyi also had a conflict with Alvey, her coach, "almost immediately upon her arrival on [UC's] campus." (*Id.* at PageID 4.) Alvey criticized as "too sexy" the fully-clothed photographs Ifeanyi posted of herself on her personal social media accounts. (*Id.* at

---

[2] Ifeanyi described this phrase to mean that "Plaintiff had developed a powerful volleyball strike that makes it difficult for an opposing team to return, resulting in increased scoring opportunities and the all-important wins that sustain and improve the standing of college athletic programs." (*Id.* at PageID 3.)

2

PageID 4–5.)³ Ifeanyi began to post only headshot photographs of herself on social media. On or about June 19, 2017, at the end of a meeting where Alvey and Ifeanyi discussed Ifeanyi's rehabilitation progress, Alvey demanded that Ifeanyi open her Instagram social media profile. (*Id.* at PageID 5.) Alvey demanded that Ifeanyi remove the following photograph of herself from the profile:



(Doc. 1-1 at PageID 14.) Alvey stated the following to Ifeanyi: "When the football players see this, what do you think they see? They see your breasts. It's seductive." (Doc. 1 at PageID 5.) Ifeanyi complied with the request to remove the photograph "[f]earful of retaliation and continued shaming from Alvey." (*Id.*)

On or about June 21, 2017, Ifeanyi received a text message from Alvey asking her to "please remove" the following two photographs from her Instagram account:

---

³ Ifeanyi alleges upon information and belief that Alvey did not make similar complaints to members of the volleyball team with slighter builds and lighter complexions about photographs posted on social media showing them wearing two-piece swimsuits. (*Id.* at PageID 5.) However, allegations based upon information and belief are appropriate only "where a complaint contains supporting factual allegations." *Cassidy v. Teaching Co., LLC*, No. 2:13-CV-884, 2014 WL 1599518, at *3 (S.D. Ohio Apr. 21, 2014). Ifeanyi does not provide any facts upon which this information and belief allegation is made.

3




(Doc. 1-2 at PageID 15–16.) Ifeanyi responded as follows in a text message:

> Ok Coach However I feel like I'm being body shamed because I'm not flat chested. I'm not trying to show my boobs coach, I can't make them go away. In these pictures I just got my hair done and really liked my makeup and thought my pictures were pretty. My teammates have swimsuit photos that are more revealing than me in a tank top. I will delete them if you really want me too but I feel like because people say I'm pretty I'm being sexualized. There's a history of black women because of their bodies being sexualized and that's what appears to be happening to me. I can't help the way I'm built. I am not trying to argue, I just feel like I have to be flat chested or real skinny in order to post

(Doc. 1-3 at PageID 17.) Alvey did not respond to the text message, but she later acknowledged that she had received it. (Doc. 1 at PageID 6.)

Eight days later on June 29, 2017, the week after Ifeanyi won the top performer award from the strength training coach, Alvey called Ifeanyi into her office and dismissed her from the volleyball team. Alvey told Ifeanyi that she and Ifeanyi had "different philosophies." (*Id.*) When Ifeanyi asked if she was being dismissed because of her text message, "Alvey indicated that she read it, but would not discuss it further and offered no other reason for this devastating action." (*Id.*) McKinley was present during the meeting. (*Id.*) She agreed with Ifeanyi's

4

dismissal and the need for Ifeanyi and UC to "part ways." (*Id.*) Ifeanyi was permitted to retain her scholarship for the 2017–2018 school year, but she was told that her scholarship would not be renewed for the next school year. She also was advised to return her school-issued apparel and to move out of her athletic dorm room. (*Id.* at PageID 6–7.) Ifeanyi is unable to play competitive volleyball for the 2018–2019 season due to NCAA transfer rules and regulations. (*Id.* at PageID 7.) She will be forced to enroll in another university to complete her collegiate education without the benefit of an athletic scholarship. (*Id.*)

Ifeanyi filed a complaint with UC's Title IX office alleging discrimination against Alvey and McKinley. (*Id.*) As of March 20, 2018, UC had not completed its investigation nor provided Ifeanyi with a meaningful opportunity to appeal the decision to remove her from the team or not renew her scholarship. (*Id.*)

In the initial Complaint in this case, Ifeanyi asserts the following seven claims against UC and against Alvey and McKinley in both their individual and official capacities:

> (1) Race/color discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, and Ohio Revised Code § 4112.02 (All Defendants);
>
> (2) Sex discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, and Ohio Revised Code § 4112.02 (All Defendants);
>
> (3) Sexual harassment in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, and Ohio Revised Code § 4112.02 (All Defendants);
>
> (4) Retaliation in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* (All Defendants);
>
> (5) Civil conspiracy to violate Title VII, 42 U.S.C. § 2000e, *et seq.* (All Defendants);
>
> (6) Intentional infliction of emotional distress (All Defendants); and
>
> (7) Denial of due process pursuant to 42 U.S.C. § 1983.

(*Id.* at PageID 7–12.)

**B.     Motion to Dismiss and Motion for Leave to Amend Complaint**

Defendants have moved to dismiss the Complaint. Ifeanyi opposes dismissal of the Complaint in part, but she "consents to dismissal, without prejudice" of her claims against UC and against Alvey and McKinley in their official capacities. (Doc. 12 at PageID 47, n.2.) Ifeanyi also seeks leave to file a proposed Amended Complaint. (Docs. 12-1, 12-2.) Defendants respond that the Motion for Leave to Amend Complaint should be denied as futile.

**C.     Proposed Amended Complaint**

The proposed Amended Complaint largely restates the factual allegations of the initial Complaint. Ifeanyi adds a factual allegation that, after she complained to Alvey in the June 21, 2017 text message that Alvey was "body shaming" her, Alvey and McKinley were required to report her allegation of mistreatment to UC's Title IX office. (Doc. 12-2 at PageID 64–65.) Both failed to do so. (*Id.*) In regards to the Title IX complaint that Ifeanyi herself filed with UC, Ifeanyi now alleges that UC completed its administrative review on April 8, 2015, and "concluded that Alvey retaliated against Plaintiff and that Alvey and McKinley failed to report Plaintiff's complaints appropriately to the Title IX office in accordance with university policy." (*Id.* at PageID 65.) Ifeanyi did not attach a copy of UC's Title IX complaint findings to the proposed Amended Complaint. Finally, Ifeanyi also adds an updated allegation that her scholarship, in fact, was not renewed after the 2017–2018 academic year. (*Id.* at PageID 66.)

In the proposed Amended Complaint, UC is not a defendant, and Alvey and McKinley are only sued in their individual capacities. (*Id.* at PageID 59.) Ifeanyi asserts seven claims, including a new First Amendment retaliation claim, as follows:

6

(1) Race/color discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, and Ohio Revised Code § 4112.02 (Both Defendants);

(2) Sex discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, and Ohio Revised Code § 4112.02 (Both Defendants);

(3) Sexual harassment in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, and Ohio Revised Code § 4112.02 (Both Defendants);

(4) Retaliation for exercising rights protected by 42 U.S.C. § 2000e, *et seq.*, and the First Amendment to the United States Constitution (Both Defendants);

(5) Civil conspiracy to violate Title VII, 42 U.S.C. § 2000e, *et seq.* (Both Defendants);

(6) Intentional infliction of emotional distress (Both Defendants); and

(7) Denial of due process pursuant to 42 U.S.C. § 1983.

(Doc. 12-2 at PageID 66–71.)

## II. STANDARDS GOVERNING MOTIONS TO DISMISS AND MOTIONS FOR LEAVE TO AMEND

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, a complaint must comply with Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Rule 8(a)).

A complaint must include sufficient facts to state a claim that is plausible on its face and not speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of

action" will not suffice. *Twombly*, 550 U.S. at 555. A complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014) (citation omitted). However, it "does not need detailed factual allegations" or "heightened fact pleading of specifics." *Twombly*, 550 U.S. at 555, 570. A district court examining the sufficiency of a complaint must accept well-pleaded facts as true, but not legal conclusions or legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678–79; *DiGeronimo Aggregates*, 763 F.3d at 509.

Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its pleading only with the written consent of the opposing party or with the Court's leave. A motion for leave to amend is addressed to the discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In exercising its discretion, a district court "should freely grant leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *U.S. v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). In determining whether justice requires leave to amend, a district court can consider whether allowing the amendment will result in undue prejudice to the opposing party and whether the moving party exhibits undue delay, bad faith, or a dilatory motive. *Foman*, 371 U.S. at 182. Further, the court may deny leave to amend where it appears that doing so would be futile. *Id.*

### III. ANALYSIS

The Court will examine for each set of claims whether either the Complaint or the proposed Amended Complaint states a claim upon which relief can be granted. However, the

Court will proceed with the understanding that Ifeanyi has withdrawn the claims against UC and against Alvey and McKinley in their individual capacities.

### A. Title VII Claims and Civil Conspiracy to Violate Title VII

Ifeanyi asserts Title VII claims against Alvey and McKinley for race- and gender-based disparate treatment, sexual harassment, retaliation, and civil conspiracy. Title VII makes it "an unlawful *employment* practice for an *employer* to fail or refuse to hire or to discharge, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges *of employment*, because of such individual's race, color . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Title VII also makes it "an unlawful *employment* practice" to retaliate against "*employees* or *applicants for employment*" for opposing an unlawful *employment* practice. 42 U.S.C. § 2000e-3(a) (emphasis added). Ifeanyi does not allege that UC, or its employees, Alvey or McKinley, are her employers, nor that she is an employee, and as such, she cannot state a claim under Title VII. *See, e.g., Halcomb v. Black Mountain Resources, LLC*, 46 F. Supp. 3d 707, 709–10 (E.D. Ky. 2014) (stating that the employment relationship must be pleaded in the complaint), *judgment amended by* 303 F.R.D. 496 (E.D. Ky. 2014); *Brintley, M.D. v. St. Mary Mercy Hosp.*, 904 F. Supp. 2d 699, 714 (E.D. Mich. 2012) ("It is well-settled, however, that to make out a claim for relief under Title VII, it must be shown that there existed an employer-employee relationship between the plaintiff and the defendant."), *aff'd*, 545 F. App'x 484 (6th Cir. 2013); *Neff v. Civil Air Patrol*, 916 F. Supp. 710, 712 (S.D. Ohio 1996) (stating that only employees can be Title VII plaintiffs).

Contrary to Ifeanyi's argument, the unpublished decision of *Heike v. Guevara*, 519 F. App'x 911 (6th Cir. 2013), does not require a different result. The facts in *Heike* are similar to

9

those here in that a female college student and basketball player, Brooke Heike, sued her former coach and other university officials because they revoked her athletic scholarship. *Id.* at 914–16. Heike asserted nine claims against the defendants, including denial of due process, a violation of equal protection rights, common law torts, and a discrimination in violation of the Michigan Elliot-Larsen Civil Rights Act. *Id.* at 917. Heike alleged in the equal protection claim that defendants discriminated against her because she was white. *Id.* at 918. The court analyzed the equal protection claim using the "familiar employment-discrimination rubric" of the *McDonnell-Douglas* proof-shifting scheme, while recognizing that "collegiate athletic scholarships are not precise analogues to employment contracts." *Id.* at 918. However, although the court analyzed the equal protection claim using familiar Title VII standards, the court did not hold or imply that Heike could state a Title VII claim against the university officials. The Court will dismiss the Title VII claims in the Complaint and deny leave to re-state the claims in an Amended Complaint as futile.

**B.    42 U.S.C. § 1981 Claims**

Ifeanyi also asserts claims for race discrimination pursuant to 42 U.S.C. § 1981. Section 1981 guarantees to all persons "the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981. It "prohibit[s] racial discrimination in the making and enforcement of contracts." *McCormick v. Miami Univ.*, 693 F.3d 654, 659 (6th Cir. 2012). However, "[42 U.S.C.] § 1983 is the exclusive mechanism to vindicate violations of § 1981 by an individual state actor acting in his individual capacity." *Id.* at 661. Accordingly, Ifeanyi has failed to state a claim upon which relief can be granted to the extent she asserts race

discrimination pursuant to 42 U.S.C. § 1981. The Court will dismiss the § 1981 claim in the Complaint and deny leave to re-state the claim in an Amended Complaint as futile.

The Court notes that Ifeanyi has not asserted sex- or race-based disparate treatment claims pursuant to 42 U.S.C. § 1983. It would be improper for the Court to articulate out of whole cloth any claims for Ifeanyi. However, as explained below, Ifeanyi will be required to file a revised Amended Complaint omitting the futile causes of action within fourteen days of the date of this Order. The Court hereby grants Ifeanyi leave to assert in the revised Amended Complaint sex- or race-based disparate treatment claims pursuant to 42 U.S.C. § 1983 upon which relief can be granted. Defendants are granted leave to timely move to dismiss any new claims asserted by Ifeanyi if appropriate.

C.  **Ohio Revised Code § 4112.02**

Finally, in the last of the expressly stated discrimination claims, Ifeanyi asserts she was discriminated against on the basis of her race and sex in violation of Ohio Revised Code § 4112.02. The Ohio Revised Code makes it unlawful for an employer "because of the race, color . . . sex . . . of any person, to discharge without cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment." Ohio Rev. Code 4112.02(A). Ifeanyi cannot assert these claims against Alvey and McKinley, both state employees, because such state law claims are barred under Ohio Revised Code §§ 9.86 and 2743.02(F). *See McCormick*, 693 F.3d at 664–65.

Ohio Revised Code § 9.86 confers immunity on state officers and employees in civil actions arising under Ohio law for "damage or injury caused in the performance of [their] duties" unless their actions "were manifestly outside the scope of [their] employment or official

responsibilities" or unless they "acted with malicious purpose, in bad faith, or in a wanton and reckless manner." Ohio Revised Code § 2743.02(F) requires that civil actions in which it is alleged that state officer or employees actions fall within the § 9.86 exceptions "shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity." These sections together require Ifeanyi to assert her individual capacity state law claims against Alvey and McKinley in the Ohio Court of Claims, not here. *See McCormick*, 693 F.3d at 665; *Anderson v. Ohio State Univ.*, 26 F. App'x 412, 415 (6th Cir. 2001). Lacking jurisdiction, the Court will dismiss the Ohio Revised Code § 4112.02 claims in the Complaint and deny leave to re-state the claims in an Amended Complaint as futile.

## D. Procedural Due Process

Ifeanyi asserts a claim pursuant to 42 U.S.C. § 1983 that Defendants Alvey and McKinley denied her procedural due process before and after they dismissed her from the team and did not renew her scholarship. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Due process is implicated "only when state conduct 'alters a right or status previously recognized by law.'" *See Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir. 1999) (quoting *Paul v. Davis*, 424 U.S. 693, 711 (1976)). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (internal quotation and citation omitted). "To establish a violation of [her] procedural due process rights, [Ifeanyi] must show (1) that [she]

12

was deprived of a protected liberty or property interest, and (2) that such deprivation occurred without the requisite due process of law." *Heike*, 519 F. App'x at 923 (citation omitted).

Property interests "are defined by rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 924 (citation omitted). A purported property interest is not protected simply because a person has "an abstract need or desire" or "unilateral expectation" for it. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Instead, the person must have a "legitimate claim of entitlement to it." *Id.*

Ifeanyi asserts that she has a property interest in her athletic scholarship to UC and in continuing to play for the UC volleyball team. (Doc. 12 at PageID 52.) However, courts in the Sixth Circuit have held generally that there is no constitutionally protected property interest to participate in intercollegiate athletics. *See Karmanos v. Baker*, 816 F.2d 258, 260 (6th Cir. 1987) (stating that the plaintiff "did not have a constitutionally protected right to participate in intercollegiate athletics"); *Graham v. Nat'l Collegiate Athletic Ass'n*, 804 F.2d 953, 959 (6th Cir. 1986) ("The courts have consistently held that participation in interscholastic athletics is not a constitutionally protected fundamental right."); *Awrey v. Gilbertson*, 833 F. Supp. 2d 738, 742 (E.D. Mich. 2011) (finding that scholarship college athlete had no property interest protectable under the Due Process Clause to participate during the football season). Therefore, Ifeanyi has failed to assert a procedural due process claim to the extent she relies solely on her right to continue to play for the UC volleyball team.

Turning to the non-renewal of her athletic scholarship, the Complaint and proposed Amended Complaint allegations suggest that Ifeanyi's scholarship was for a term of one

13

academic year (2017–2018) and was subject to renewal. (Doc. 1 at PageID 7 ("While Plaintiff has been able to remain on scholarship for the entirety of the 2017–2018 academic year, she has been advised that based on her dismissal from the team, her scholarship would not be renewed."); Doc. 12-2 at PageID 66 ("While Plaintiff was permitted to remain on scholarship for the entirety of the 2017–2018 academic year, based on her dismissal from the team, her scholarship was not renewed.").) Ifeanyi does not allege facts suggesting that she had an entitlement to renewal of the scholarship nor that scholarship renewal was to be based on a set of objective considerations which she satisfied. In the absence of such facts, the Court finds that Ifeanyi has not established that she had more than a unilateral expectation that Alvey and McKinley would renew her scholarship. *See Roth*, 408 U.S. at 577 (stating that a unilateral expectation did not create property rights).

Ifeanyi argues that *Heike* recognized a collegiate student athlete's property right in her athletic scholarship. The Court disagrees. Both the district court and the Sixth Circuit in *Heike* assumed that Heike had a property interest in her athletic scholarship and proceeded only to examine whether she was afforded the process that was due. 519 F. App'x at 924 ("Here, the district court assumed that Heike had a property interest and addressed the adequacy of the process afforded her.") *Heike* does not establish the principle that a college student athlete has a constitutionally-protected property interest in the renewal of her athletic scholarship. In fact, cases from other jurisdictions indicate that student athletes have no protectable property interest in their athletic scholarships. *See Spath v. Nat'l Collegiate Athletic Ass'n*, 728 F.2d 25, 29 (1st Cir. 1984) (stating that a college athlete has only a non-protectable expectancy for renewal of a yearly scholarship); *Austin v. Univ. of Oregon*, 205 F. Supp. 3d 1214, 1221–22 (D. Or. 2016)

14

(finding that college student athletes had no clearly established right in the economic benefit of their athletic scholarship); *Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619, 635 (W.D. Va. 2015) ("Cases widely hold that college athletic scholarships and participation in collegiate athletics are not cognizable property interests."); *Fluitt v. Univ. of Neb.*, 489 F. Supp. 1194, 1203 (D. Neb. 1980) (explaining that a scholarship "would not seem to be the type of property interest that could be relied upon" except for a one-year scholarship that already has been offered).

In response, Ifeanyi correctly points out that the Due Process Clause is implicated when university students face disciplinary suspensions or expulsions. *See, e.g., Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) ("State universities must afford students minimum due process protections before issuing significant disciplinary decisions."); *Flaim v. Med. College of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005) ("[T]he Due Process Clause is implicated by higher education disciplinary decisions."); *Jaksa v. Regents of Univ. of Mich.*, 597 F. Supp. 1245, 1247–48 (E.D. Mich. 1984) (stating in regards to a suspended college student, that "[w]hether plaintiff's interest is a "liberty" interest, "property" interest, or both, it is clear that he is entitled to the protection of the due process clause."). Ifeanyi was not suspended or expelled as a student from UC, however. She has not alleged that she was denied the opportunity to continue her academic career at UC as a non-scholarship student.

Even if the Court were to agree with Ifeanyi and find that she was entitled to procedural due process because she had a liberty or property right to play volleyball for UC or retain her scholarship, Ifeanyi has not established that the right is clearly established. State official defendants such as Alvey and McKinley are entitled to qualified immunity unless their conduct violates a clearly established constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 200–01

15

(2001) ("Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). The inquiry into whether the constitutional right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. Ifeanyi has not identified a Supreme Court or Sixth Circuit case giving fair warning to Alvey and McKinley that Ifeanyi was entitled to procedural due process before they dismissed her from the volleyball team and did not renew her scholarship. *See Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005) (stating that the clearly established law must give defendants fair warning their actions were unconstitutional).

For these reasons, the Court will dismiss the due process claim in the Complaint and will deny leave to re-state the claim in the proposed Amended Complaint.

E.  **Intentional Infliction of Emotional Distress**

Next, Ifeanyi asserts claims in the Complaint and in the proposed Amended Complaint for common law intentional infliction of emotional distress against Alvey and McKinley. This state law claim, like the discrimination claim brought under Ohio Revised Code § 4112.02, is barred by Ohio Revised Code §§ 9.86 and 2743.02(F). *See McCormick*, 693 F.3d at 664–65. The Court will dismiss the intentional infliction of emotional distress claim in the Complaint and deny leave to re-state it in the proposed Amended Complaint.

16

F.  **First Amendment Retaliation**

Finally, Ifeanyi seeks for the first time in the proposed Amended Complaint to add a claim for First Amendment retaliation pursuant to 42 U.S.C. § 1983. In a First Amendment retaliation case, the plaintiff must establish that (1) she engaged in a constitutionally protected activity; (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in the protected activity; and (3) the adverse action was motivated at least in part by the constitutionally protected activity. *Wenk v. O'Reilly*, 783 F.3d 585, 593 (6th Cir. 2015); *Jenkins v. Rock Hill Loc. Sch. Dist.*, 513 F.3d 580, 585–86 (6th Cir. 2008). The speech need not touch on a matter of public concern to qualify as constitutionally protected activity in the Sixth Circuit unless the plaintiff speaker is a public employee. *Nailon v. Univ. of Cincinnati*, 715 F. App'x 509, 514 (6th Cir. 2017) ("The district court correctly recognized that Davis's speech need not touch upon a matter of public concern, because the public concern test is explicitly limited to government employees . . . ."); *Jenkins*, 513 F.3d at 586–88 (finding that parents criticizing school officials is protected speech even when the criticism is not on a matter of public concern); *Kesterson v. Kent State Univ.*, No. 5:16-cv-298, 2017 WL 995222, at *11–12 (N.D. Ohio Mar. 15, 2017) (finding that a student's complaint about sexual assault did not need to constitute a matter of public concern to be the basis for a First Amendment retaliation claim).

Ifeanyi has stated a prima facie claim for First Amendment retaliation in the proposed Amended Complaint. First, she raises concerns about sex and race discrimination in her June 21, 2017 text message to Alvey where she objects to being sexualized because she is pretty and states that there is a history of black women being sexualized. (Doc. 1-3 at PageID 17.) That is constitutionally protected activity. Second, the actions of Alvey and McKinley in removing her

17

from the team and not renewing her scholarship would tend to deter a person of ordinary firmness from engaging in the constitutionally protected speech. Third, Ifeanyi has alleged sufficient facts giving rise to an inference that her removal from the team and loss of her scholarship were motivated at least in part by her constitutionally-protected speech. She alleges that during the June 29, 2017 meeting in which she was dismissed from the team, she asked Alvey in the presence of McKinley if she was being dismissed from the team because of the text message she sent one week earlier. She alleges that Alvey indicated she read the message, but she would not discuss it or offer another reason for her dismissal. (Doc. 12-2 at PageID 64–65.) These facts raise at least an inference of causation sufficient to establish a prima facie case of First Amendment retaliation.

In addition, the Court finds that the right not be retaliated against for exercising First Amendment rights was clearly established in July 2016. *See Wenk*, 783 F.3d at 598–99 (stating that the right to be free from retaliation after criticizing school officials was clearly established). The Court will grant Ifeanyi leave to assert her First Amendment retaliation claim against Alvey and McKinley in their individual capacities in a revised Amended Complaint.

18

IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 10) is **GRANTED**. Plaintiff's Motion for Leave to Amend Complaint (Doc. 12-1) is **GRANTED IN PART** as to only the First Amendment retaliation claim against Alvey and McKinley in their individual capacities and **DENIED IN PART** as to the other proposed claims. Plaintiff Ifeanyi shall file a revised Amended Complaint within fourteen days of the date of this Order. She also has leave to assert in the revised Amended Complaint a race- or sex-based discrimination claim pursuant to 42 U.S.C. § 1983.

**IT IS SO ORDERED.**

Dated this 23 day of July, 2018.

BY THE COURT:

_____
Susan J. Dlott
United States District Judge